# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
February 16, 2005 Session

## STATE OF TENNESSEE v. PRENTICE C. CALLOWAY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-832     J. Randall Wyatt, Jr., Judge**

**No. M2004-01118-CCA-R3-CD - Filed June 2, 2005**

Defendant was indicted for carjacking in count one; for theft of property over $10,000 but less than $60,000 in count two; for unlawful possession of a weapon in count three; for felony possession of an unlawful weapon in count four; for evading arrest while operating a motor vehicle in count five; for misdemeanor evading arrest in count six; for resisting arrest in count seven; for driving with a revoked license in count eight; and for criminal trespass in count nine.  Prior to trial, the State dismissed counts three, eight and nine, and the remaining counts were renumbered accordingly. Following a jury trial, Defendant was found guilty of the lesser included offense of misdemeanor theft (as renumbered)  in count one; guilty of Class C felony theft of property in count two; not guilty of possession of an unlawful weapon in count three; guilty of Class D felony evading arrest in count four; guilty of misdemeanor evading arrest in count five; and guilty of resisting arrest in count six. The trial court merged Defendant's conviction for misdemeanor theft in count one into his conviction for Class C felony theft of property in count two.  The trial court sentenced Defendant as a Range II multiple offender to ten years for the theft conviction, eight years for the felony evading arrest conviction; eleven months, twenty-nine days for the misdemeanor evading arrest conviction; and eleven months, twenty-nine days for the resisting arrest conviction.  The trial court ordered all of Defendant's sentences to be served consecutively for an effective sentence of 19 years, 10 months and fifty-eight days.  On appeal, Defendant argues (1) that the evidence is insufficient to support his conviction for felony evading arrest in count four; (2) that the trial court erred in not merging Defendant's convictions for felony evading arrest and misdemeanor evading arrest in counts four and five; (3) that the trial court erred in determining the length of Defendant's sentences; and (4) that the trial court erred in ordering the sentences to be served consecutively.  Defendant does not challenge the sufficiency of the evidence to support his felony theft or misdemeanor resisting arrest convictions.  After a thorough review of the record, we modify Defendant's conviction for evading arrest from a Class D felony to a Class E felony, and impose a sentence of four years. We merge Defendant's misdemeanor evading arrest conviction with his Class E felony evading arrest conviction.  We affirm Defendant's conviction and sentence for his Class C theft offense and his misdemeanor resisting arrest offense, and the trial court's imposition of consecutive sentencing, for an effective sentence, as modified, of fourteen years, eleven months and twenty-nine days.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed as Modified**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

Jay Norman, Nashville, Tennessee, for the appellant, Prentice C. Calloway.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Jim Todd, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Salli LaGrone was shopping in Nashville on February 14, 2002. Around 2:30 p.m., she returned to her vehicle which was parked in a store's parking lot. Ms. LaGrone closed her car door, started the engine, and leaned down to place a package in the floorboard on the passenger side of the car. When she sat back up, a man, whom she later identified as Defendant, was leaning into her car, just inches from her face. Ms. LaGrone said that Defendant told her that he was in trouble, and that he was going to take her car. He demanded that she give him cash and her jewelry. Ms. LaGrone showed Defendant that her wallet was empty. She offered him her earring, but Defendant did not want it. Defendant ordered Ms. LaGrone to unlock the passenger door. Ms. LaGrone saw the shadow of a second person when she leaned over to open the passenger side door. At this point, Ms. LaGrone managed to slip out of her car, and Defendant and the other person drove away in her car. Ms. LaGrone returned to the store and called 911.

Ms. LaGrone said that although Defendant did not physically hurt her, she was very afraid. She said that she did not see what the other man looked like because she did not want to break her eye contact with Defendant. She described Defendant as a lightly complected, African-American of average build and height, with three gold teeth. Ms. LaGrone said Defendant was wearing a black jacket and a dark ball cap turned around backwards. Ms. LaGrone said that she could not tell whether Defendant was armed or not, but conceded that he never displayed a weapon. Ms. LaGrone said her vehicle was a blue, 1995 Mitsubishi Montero, and she gave the investigating officers the license tag number.

Ms. LaGrone said that Detective Chad Gish showed her three sheets of photographs, and that it took her about four seconds to identify Defendant as the perpetrator from the photographs on the first sheet. Ms. LaGrone said that she could not identify the second man.

Ms. LaGrone said that she was an antique dealer and event planner, and that she had numerous antiques and other business-related items in her vehicle when it was stolen. Ms. LaGrone prepared an inventory of the items taken from her vehicle, and estimated their value at over $35,000.

On cross-examination, Ms. LaGrone reiterated that Defendant did not physically hurt her and that she did not see a weapon. Ms. LaGrone also said that she actually had several hundred dollars

hidden in her vest. Ms. LaGrone said that most of the items in her car were either not found or were damaged, but agreed that her credit cards and checks had not been used. Five or six calls were made with her cell phone. Ms. LaGrone agreed that she was aware that someone called the police shortly after the offense occurred and reported that a woman's car was stolen by two African-American men who were wearing masks.

Josh Walters, a patrol officer with the Metro Nashville Police Department, responded to the dispatcher's call about the offense. He said that Ms. LaGrone was able to provide a detailed description of the perpetrator who drove her car away, and that she was calm during the initial questioning. The anonymous telephone call reporting the offense was traced to a telephone booth at 701 Division Street, but the caller was never found.

A dispatcher sent a description of Ms. LaGrone's vehicle and license plate number out over the radio. The following day, February 15, 2002, Officer Richard Martin, Jr., was stopped at a traffic light at the intersection of Charles E. Davis Boulevard and Lafayette Street. He noticed a dark-colored Mitsubishi matching the description of Ms. LaGrone's vehicle stopped on the other side of the intersection. He later identified Defendant as the driver of the vehicle. Officer Martin turned left onto Lafayette Street, and the Mitsubishi followed several car lengths behind. Officer Martin said that he turned his vehicle around and began traveling in the opposite direction in an effort to see the license plate number of the Mitsubishi. Defendant made an abrupt right turn into a Dollar General Store's parking lot. Officer Martin was able to match the license plate number of the Mitsubishi to Ms. LaGrone's vehicle.

Officer Martin activated his emergency equipment and notified the dispatcher that he was pursuing the vehicle. Defendant exited the store's parking lot into a children's playground. Officer Martin said that the children who were playing on the playground managed to get out of the way of the vehicles. Defendant continued driving at a high rate of speed through the playground and into another parking lot. Defendant then drove across University Court and entered another field on the other side of the street. Officer Martin said that he saw several people in the field running away from Defendant's vehicle. Defendant then drove into the courtyard of the apartments on University Court. Defendant and his passenger jumped from the vehicle and began running. Officer Martin stopped his vehicle and began pursuing the two men. He notified the dispatcher that he was then on foot and requested a police officer as back-up. Officer Martin said that Defendant was wearing a blue and white shirt and a dark-colored baseball cap. Officer Martin said that he saw a gun between the two running men but could not tell which man was holding the gun.

The men ran around the corner of a building, and Officer Martin stopped. He was afraid that the men would ambush him if he pursued them around the building. Officer Martin noticed that the bystanders were looking in different directions and guessed that the two men had split up. Officer Kevin Lusk arrived to provide assistance. A woman ran up to the two police officers and whispered that a man was attempting to enter her apartment through her back door. The two officers went inside the woman's apartment building and peered up the stairwell. Officer Martin said that Defendant was standing at the top of the stairs without a shirt on, and that Defendant was "sweating

profusely." Officer Martin told Defendant several times to show his hands, and either get down on the floor or come down the stairs. Defendant did not respond to the commands. Officer Martin went halfway up the stairs, and Defendant walked down a couple of the stairs. Officer Martin grabbed Defendant and pulled him down the stairs as Defendant continued to struggle. Officer Martin sprayed Defendant with pepper spray, and the officers were finally able to handcuff Defendant.

Officer Martin said that he found a blue and white shirt between the apartment's screen door and the steel back door. Defendant was carrying a sunglass case containing women's sunglasses and a blue or black bandanna. Officer Martin said the other man was never apprehended.

On cross-examination, Officer Martin said that Ms. LaGrone's vehicle came to a gradual stop after the two men jumped out. Officer Martin said that he was aware that stolen cars were often sold to people living in the University Court area.

Officer Thomas Meeks found a single-shot shotgun in a dumpster behind the apartment building. Christopher James Brennen testified that no identifiable prints were found on Ms. LaGrone's vehicle or the gun.

Officer Gish confirmed that Ms. LaGrone readily identified Defendant as the man who stole her car. As Defendant was going through the booking process, he asked Officer Gish, "What about Anthony Taylor? Did you get him?"

The defense presented two alibi witnesses. Jacqueline Eddings, Defendant's sister-in-law, testified that Defendant was at her house on February 14, 2002, until around 2:30 p.m. when he left to pick up her children at school. Ms. Eddings said that Defendant did not have a car, and that he walked to the children's school. When she got home around 4:30 or 5:00 p.m., Defendant and the children were at her house.

Helen Strickland, Defendant's aunt, said that Defendant came by her consignment store on Lafayette Street around 4:10 or 4:15 p.m. on February 14, 2005. He picked out a couple of valentine gifts and put them in a Dollar General Store plastic bag that he was carrying. Two of Ms. Eddings' children were with Defendant. On cross-examination, Ms. Strickland conceded that she never told anyone, until shortly before trial, that Defendant had stopped by her store that afternoon.

## II. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence supporting his conviction of Class D felony evading arrest. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the

burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

It is an offense for a "person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). The offense of evading arrest while driving a motor vehicle is a Class E felony "unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony." *Id*. § 39-16-603(b)(3). Defendant concedes that the proof showed that Defendant was operating a motor vehicle when Officer Martin signaled him to stop, that he attempted to flee from Officer Martin, and that he operated his motor vehicle on a public road during at least part of his flight. Defendant argues, however, that there was no evidence that the operation of his motor vehicle caused any risk of death or injury. Alternatively, Defendant contends that even if his driving placed others in risk of death or injury, the risk did not occur while Defendant was on a street, road, alley or highway as required by statute. Under either scenario, Defendant argues that he is guilty at most of committing a Class E felony evading arrest offense.

A felony evading arrest offense is elevated from a Class E felony to a Class D felony if the defendant's flight creates a risk of death or injury to innocent bystanders. *Id*. Officer Martin testified that Defendant drove through the Dollar General Store's parking lot "in an extremely reckless manner" into a grass field. Officer Martin stated:

> I could see up ahead of us. There was a play area that's just a little playground and a basketball court. There were several children out playing in that area. I don't know if–that they saw us coming or if they heard my siren, but, they were able to run out of the way . . . . [Defendant] went bounding through that playground and continued at a high rate of speed, fishtailing . . . and, the vehicle was bouncing all over the [place] through a parking lot at 101 University Court. We crossed another street, which is actually University Court, and going through another field . . . I could see up ahead of us . . .there are several people out, and they're running to get out from in front of this vehicle that's fleeing from me.

Based on Officer Martin's testimony, a reasonable trier of fact could find that Defendant's driving caused a risk of death or injury to others beyond a reasonable doubt.

Notwithstanding the presence of a risk to others, Defendant argues that his conviction for Class D felony evading arrest should be reduced to a Class E felony because the evidence does not support a finding that the risk of death or injury caused by his flight occurred on a public highway.

Officer Martin testified that when he activated his emergency equipment, Defendant turned sharply into the Dollar General Store's parking lot, drove through a playground, crossed University Court, and drove into a field where the vehicle stopped in the courtyard of an apartment complex. The only "street, road, alley or highway" Defendant traveled was when he crossed University Court. This Court has previously concluded that only part of a defendant's flight from law enforcement officers needs to occur on a street, road, alley or highway to support a felony evading arrest conviction. *State v. Gregory Dunnorm*, E2001-00566-CCA-R3-CD, 2002 WL 1298770 (Tenn. Crim. App., at Knoxville, June 12, 2002), *no perm. to appeal filed*; *State v. Jason Eric Bradburn*, No. 01C01-9712-CC-00568, 1999 WL 632301 (Tenn. Crim. App., at Nashville, Aug. 19, 1999), *no perm. to appeal filed*.

In order to elevate the offense to a Class D felony, however, the risk of injury or death must occur while the defendant is driving on the street, road, alley or highway. *Bradburn*, 1999 WL 632301, at *4; *see also Dunnorm*, 2002 WL 1298770, at *5; *State v. Barry Marable*, No. M1999-00576-CCA-R3-CD, 2001 WL 1028817 (Tenn. Crim. App., at Nashville, Sept. 7, 2001), *perm. to appeal denied* (Tenn. Feb. 11, 2002). Although there is ample evidence that the bystanders in the playground and field were placed at risk of death or injury, "that is not [all of] what the statute requires." *Bradburn*, 1999 WL 632301, at *4. There is no evidence that Defendant's driving created any risk of death or injury while he was crossing University Court. Because the State failed to prove this element of the offense, the evidence is insufficient to support Defendant's conviction for Class D felony evading arrest.

However, in finding Defendant guilty of this offense, the jury necessarily found that the evidence supported the elements necessary for a conviction of Class E felony evading arrest, that is, that Defendant operated a motor vehicle on a street while intentionally fleeing a police officer after the officer signaled for Defendant to stop his vehicle. Tenn. Code Ann. § 39-16-603(b)(1).

It has long been the rule that "[w]hen the proof at trial is not sufficient to support the greater offense, but is sufficient to support a lesser included offense, this Court has the authority to order a reduction in the degree of the offense for which Defendant could be convicted." *State v. Long*, 45 S.W.3d 611, 622 (Tenn. Crim. App. 2000); *State v. Tutton*, 875 S.W.2d 295 (Tenn. Crim. App. 1993); *see also State v. Vincent Jackson*, No. W2003-01212-CCA-R3-CD, 2004 WL 833333 (Tenn. Crim. App., at Jackson, Apr. 15, 2004), *perm. to appeal filed* (Tenn. Oct. 11, 2004); *Marable*, 2001 WL 1028817, at *5. Accordingly, we modify Defendant's conviction for evading arrest from a Class D felony to a Class E felony, for which we impose a Class E, Range II, sentence of four years.

### III. Double Jeopardy Concerns

Defendant argues that his dual convictions for felony evading arrest and misdemeanor evading arrest violate double jeopardy principles. Defendant contends that his convictions arose out of a single criminal episode that did not involve multiple victims. The State argues that Defendant's flight from the police officers can be divided into two discrete acts, the first act of evading arrest occurring while he was in his motor vehicle, and the second act of evading arrest commencing when he exited his motor vehicle and fled on foot.

Both the state and the federal constitutions protect against multiple convictions or punishments for a single offense. U.S. Const. amend. V; Tenn. Const. art. 1, § 10. Our Supreme Court has noted that "three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted.). The present case raises issues reflected in the third category, that is, alleged multiple punishments for the same offense.

"In Tennessee, whether two offenses are the 'same' for double jeopardy purposes depends upon a 'close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent, and the particular facts and circumstances.'" *Id.* at 379 (quoting *State v. Black*, 524 S.W.2d 913, 919 (Tenn. 1975)). The *Denton* court employed a four-part balancing inquiry in determining whether multiple convictions offend double jeopardy. *Denton*, 938 S.W.2d at 379-81. First, the reviewing court must determine under the test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), whether each offense requires proof of an element not required in the other. Next, the reviewing court must look to the specific evidence offered to prove the offenses, and whether such evidence was the same for each offense or different. *Denton*, 938 S.W.2d at 380 (relying on *Duchac v. State*, 505 S.W.2d 237 (Tenn. 1973)). Third, the court must consider whether there were multiple acts or victims. *Id.* at 381. Finally, the court must examine the purposes of the respective statutes prohibiting the defendant's conduct and determine whether the statutes serve different purposes. *Id.* "None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other." *Id.*

We begin with a *Blockburger* analysis of the elements of the two offenses. Tennessee Code Annotated section 39-16-603(a)(1) provides that "[e]xcept as provided in subsection (b), it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person: (A) knows the officer is attempting to arrest the person; or (B) the person has been arrested." Violation of subsection (a) is a Class A misdemeanor. Tenn. Code Ann. § 39-16-603(a)(3). Subsection (b) makes it unlawful for a person to flee or attempt to flee in a motor vehicle after receiving a signal from a police officer to stop. Tenn. Code Ann. § 39-16-603(b)(1). Violation of subsection (b) is a Class E felony if the person's evading or attempt to evade arrest in a motor vehicle does not create a risk of death or injury to any bystanders.

Subsection (a) requires that the accused know that the police officer is attempting to arrest the person, and subsection (b) requires only a signal to stop, and not an arrest or attempted arrest. In addition, subsection (b) addresses a specific method of evading arrest, that is, by use of a motor vehicle. *See State v. Daniel W. Livingston*, No. M2004-00086-CCA-R3-CD, 2005 WL 639125, at *5 (Tenn. Crim. App., at Nashville, Mar. 15, 2005), *no perm. to appeal filed*. Thus, different elements are present in the two offenses, and the offenses pass *Blockburger* scrutiny.

Both of the charged offenses were established to some extent by the same course of conduct, that is, Defendant's flight from Officer Martin. However, proof that Defendant fled in a motor vehicle after receiving a signal to stop was required for the felony evading arrest conviction while the misdemeanor evading arrest conviction required proof that Defendant fled, by any means of locomotion, knowing that Officer Martin was attempting to arrest him. *Compare* Tenn. Code Ann. § 39-16-603(a)(1)(A) *with* § 39-16-603(b)(1).

The offenses, however, did not involve multiple victims or multiple episodes. Neither misdemeanor evading arrest nor Class E felony evading arrest involves a "victim" *per se. See State v. Jimmy Lee Cullop, Jr.*, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *8 (Tenn. Crim. App., at Knoxville, Apr. 17, 2001), *no perm. to appeal filed*; *State v. Brandon Patrick*, No. E2003-02382-CCA-R3-CD, 2005 WL 544738, at *5 (Tenn. Crim. App., at Knoxville, Mar. 8, 2005), *no perm. to appeal filed*.

The State strongly urges that two discrete acts of flight occurred that afternoon, each subject to punishment. The first act began when Defendant drove away from Officer Martin after he activated his emergency lights/equipment, and ended when Defendant jumped out of the moving car. The second discrete act under the State's theory thus started as soon as Defendant began to flee on foot and ended with his apprehension in an apartment building's stairwell. Defendant, on the other hand, argues that a defendant's chosen methods of flight during a single episode determine the degree of punishment and not the number of offenses. Based on our review of the proof presented at trial, we conclude that the chase giving rise to both offenses was one continuous criminal episode rather than two discrete acts capable of supporting multiple convictions.

Nor can we conclude that the respective legislative purposes of the misdemeanor evading arrest and the Class E felony evading arrest address different concerns. The evil at which the statute is directed is the same whether one flees on foot or motor vehicle, that is, to discourage flight from a police officer performing his or her official duties. The fact that punishment is enhanced if the suspect flees in a motor vehicle rather than by some other means of locomotion does not alter the general evil the statute seeks to prevent. *See State v. Jimmy Lee Cullop, Jr.*, No. E2000-00095-CCA-R3-CD, 2001 WL 378543, at *8 (Tenn. Crim. App, at Knoxville, Apr. 17, 2001) (The Class E felony evading arrest statute addresses "those who have refused to yield to a law enforcement officer").

Based on the facts presented in this case, we find that Defendant's convictions for misdemeanor evading arrest and Class E felony evading arrest violate Defendant's rights against

double jeopardy. Accordingly, we merge Defendant's conviction for misdemeanor evading arrest into his conviction for Class E felony evading arrest.

## IV. Sentencing Issues

The only witness at Defendant's sentencing hearing was Ms. LaGrone who described the emotional and financial problems she had experienced since the theft of her car. The State also introduced Defendant's pre-sentence report. According to the pre-sentence report, Defendant has three prior Class C felony convictions for aggravated assault, voluntary manslaughter and sale of cocaine. In addition, Defendant has ten prior misdemeanor convictions for simple assault, simple possession, contributing to the delinquency of a minor, resisting arrest, possession of a gambling device, and driving with a revoked license. Defendant also has a prior conviction for reckless endangerment, but the record does not specify whether this was a Class E felony or a Class A misdemeanor. *See* Tenn. Code Ann. § 39-13-103. The trial court also found that the record supported a finding that Defendant had previously violated the terms of a probated sentence.

The trial court considered Defendant's convictions for aggravated assault and voluntary manslaughter as one offense in determining the appropriate range because the offenses occurred on the same day. *See id.* § 40-35-106(b)(4). The statute provides, however, that "acts resulting in bodily injury or threatened bodily injury to the victim or victims shall not be construed to be a single course of conduct." *Id.* Thus, Defendant's separate convictions for aggravated assault and voluntary manslaughter constitute two separate acts for the purposes of the exception to the twenty-four hour merger rule. *State v. Horton*, 880 S.W.2d 732, 736 (Tenn. Crim. App. 1994). In any event, Defendant has the requisite minimum two prior felony convictions within the same conviction class for his Class C theft conviction, and within a higher class for his Class E felony evading arrest conviction, to support his classification as a multiple offender for both offenses. Tenn. Code Ann. § 40-35-106(a)(1).

Based on the evidence presented at trial, Ms. LaGrone's testimony at the sentencing hearing, and the pre-sentence report, the trial court applied the following enhancement factors: factor (2), Defendant has a previous history of criminal convictions and behavior in addition to those necessary to establish the appropriate range; factor (3), Defendant was a leader in the commission of the crime; factor (9), Defendant has a previous unwillingness to comply with the conditions of a sentence involving release into the community; and factor (17), Defendant committed the crime under circumstances in which the potential for bodily injury to a victim was great. Tenn. Code Ann. §§ 40-35-114(2), (3), (9), and (17). The trial court did not find the presence of any mitigating factors. Based on four enhancement factors and no mitigating factors, the trial court sentenced Defendant as a Range II, multiple offender, to ten years for the theft conviction, eight years for the Class D evading arrest conviction, and eleven months, twenty-nine days for each misdemeanor conviction.

In addition, the trial court found that consecutive sentencing was appropriate based on the extensiveness of Defendant's record of criminal activity and his status as a dangerous offender under

*Wilkerson* principles. *See id.* §§ 40-35-115(b)(2) and (4). The trial court thus ordered all of Defendant's sentences to be served consecutively.

## A. Length of Sentence

Defendant does not challenge the trial court's application of enhancement factors (2) and (9). Defendant argues, however, that the trial court misapplied enhancement factors (3) and (17) in determining the length of his sentences for his theft and felony evading arrest convictions. When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Defendant argues that the trial court erred in finding that Defendant was a leader in the commission of the offenses, factor (3), because there was insufficient proof that some other person participated in the crimes. We agree with Defendant's underlying premise that there must be someone for Defendant "to lead" in order to support the application of this enhancement factor. *State v. Alexander*, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997). We disagree, however, with Defendant's contention that the proof did not establish that there was more than one criminal actor in both the theft offense and the felony evading arrest offense.

Ms. LaGrone testified that two men drove away in her car. Defendant was the person who approached her and told her he was "taking her car." Defendant demanded cash and money, and instructed Ms. LaGrone to unlock the passenger door. Ms. LaGrone did not see the face of the second man because she was afraid to lose eye contact with Defendant. She testified, however, that she saw a second person's shadow on the passenger side of the vehicle. Based on the foregoing, we cannot conclude that the trial court erred in finding that Defendant was a leader of the theft offense.

Officer Martin said that two men were in Ms. LaGrone's vehicle the day after it was stolen. He identified Defendant as the driver. When the vehicle stopped at the University Court apartments, two men jumped out. Officer Martin said that two men ran side by side with a gun between them.

While Defendant was being booked, he asked Detective Gish if they had arrested Anthony Taylor yet. The evidence does not preponderate against the trial court's finding that Defendant was a leader in the commission of the felony evading arrest conviction.

Defendant also argues that his conduct did not create a potential for bodily injury to the victim. Enhancement factor (17) requires a finding that the crime was committed under circumstances which posed a great potential for bodily injury to a victim. *See* Tenn. Code Ann. § 40-35-114(17). Ms. LaGrone testified that Defendant did not hurt her, and she did not see a weapon during the theft of her vehicle. Defendant contends that the trial court erred in not considering that his "conduct neither caused nor threatened serious bodily injury" as a mitigating factor in determining the length of this sentence for his theft conviction. *See id*. § 40-35-113(1).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id*. § 39-14-103. A threat of bodily injury during the commission of a theft is thus not an element of this offense. The trial court found that Defendant's conduct during the commission of the theft offense presented a threat of bodily injury to Ms. LaGrone. Based on the record, we cannot conclude that the trial court erred in considering enhancement factor (17) in determining the length of Defendant's sentence, or failing to consider the lack of bodily injury to the victim as a mitigating factor.

The trial court also applied enhancement factor (17) to Defendant's sentence for felony evading arrest. In considering this factor, the trial court placed great weight on the fact that Defendant drove his vehicle in such a way that numerous bystanders in both the playground and the field were at risk of serious bodily injury. Class E felony evading arrest, however, does not involve a "victim" *per se*. *See Patrick*, 2005 WL 544738, at *5; *Cullop*, 2001 WL 378543, at *8. Our Supreme Court has previously observed that "there is nothing in the statutory language of the enhancement factor [17] to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals." *State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002). Thus, we find that the trial court erred in applying factor (17) as a sentencing enhancer to Defendant's felony evading arrest conviction.

The trial court's concerns, however, may be appropriately addressed under enhancement factor (11) which is applicable when "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." Enhancement factor (11) is "broadly written to include 'risk to human life,' and it does not contain the restrictions to 'the crime' and 'a victim'" that are contained in Tennessee Code Annotated section 40-35-114(17). *Imfeld*, 70 S.W.3d at 707. Enhancement factor (11) has been applied in situations where the defendant's conduct creates a high risk to the life of a person other than the victim, and the creation of a substantial risk of death to a person is not an essential element of the offense. *State v. Bingham*, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). Class E felony evading arrest does not include risk of death or injury as an element. The trial court found that Defendant drove through a playground where children were present at a high rate of speed

and through a field where people fled to escape his vehicle. If "the trial court does not apply an enhancement factor, the appellate court is not precluded from applying the factor when undertaking its *de novo* review if the factor is appropriate for the offense and established in the record." *State v. Winfield*, 23 S.W.3d 279, 283-84 (Tenn. 2000) (citing *State v. Pearson*, 858 S.W.2d 879, 885 (Tenn. 1993)).

Based on the record of the facts and circumstances surrounding this case and the findings of the trial court, we find that consideration of enhancement factor (11) is proper in determining the length of Defendant's sentence for his felony evading arrest conviction.

In summary, considering the presence of four enhancement factors for both the theft conviction and the felony evading arrest conviction, and the absence of any mitigating factors, we affirm Defendant's sentence of ten years for the theft conviction and impose a sentence of four years for the Class E felony evading arrest conviction.

Defendant argues that the application of the enhancement factors based upon factors other than his prior convictions which were not submitted to a jury violates the principles set forth in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). Our Supreme Court, however, has recently concluded that Tennessee's sentencing scheme does not violate a defendant's Sixth Amendment rights as addressed in *Blakely. State v. Edwin Gomez and Jonathan S. Londono,* ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. Apr. 15, 2005). Defendant is not entitled to relief on his *Blakely* challenge.

## B. Consecutive Sentencing

Defendant argues that the trial court's imposition of consecutive sentencing was improper because there was insufficient evidence to support a finding that he was a dangerous offender or that he had a record of extensive criminal activity. *See* Tenn. Code Ann. §§ 40-35-115(b)(2) and (4).

When a defendant is convicted of multiple crimes, the trial court, in its discretion, may order the sentences to run consecutively if it finds by a preponderance of the evidence that a defendant falls into one of seven categories listed in Tennessee Code Annotated section 40-35-115. A finding that a defendant is a dangerous offender, by itself, is not sufficient to support the imposition of consecutive sentencing. *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). If a trial court bases its determination of consecutive sentences on the finding that Defendant is a dangerous offender, the court must make two additional findings. *Imfeld*, 70 S.W.3d at 708; *Wilkerson*, 905 S.W.2d at 938. Our Supreme Court has stressed the need to make these findings because the dangerous offender category is "the most subjective and hardest to apply" of all the categories for consecutive sentences. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). Thus, the trial court must first find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and, second, it must find consecutive sentencing to be rationally related to the severity of the offenses. *Wilkerson*, 905 S.W.2d at 939. Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), "the imposition of consecutive

sentencing is also guided by the general sentencing principles that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed.'" *Imfeld*, 70 S.W.3d at 708 (quoting Tenn. Code Ann. §§ 40-35-102(1) and -103(2)); *Lane*, 3 S.W.3d at 461.

The trial court addressed the propriety of imposing consecutive sentencing at the conclusion of the sentencing hearing as follows:

> In addition to [the enhancement factors], the Court is of the opinion that, in this man's case, that Section 40-35-115 applies with regard to these offenses. I find that he is an offender whose record of criminal activity is extensive. And I, also, find that, under the law, under the dangerous offender category, that that also applies. And I think that the sentences that are being imposed are reasonably related to the severity of the offense. And I think the sentences are necessary – necessary to protect the public from further criminal activity by this defendant. That's under *State v. Wilkerson*, those two factors.

We agree with Defendant's contention that the trial court failed to make the specific factual findings required by *Wilkerson* as a prerequisite to finding that Defendant is a dangerous offender for whom consecutive sentencing is appropriate. The mere recitation of the *Wilkerson* factors is not a substitute for the requirement of making specific findings. *State v. Guadalupe Arroyo*, No. E2003-02355-CCA-R3-CD, 2004 WL 1924033, at *4 (Tenn. Crim. App., at Knoxville, Aug. 30, 2004), *no perm. to appeal filed*. Accordingly, we must determine if consecutive sentencing was appropriate based on Defendant's record of criminal activity.

Although Defendant argues to the contrary, we find that Defendant's record of criminal activity is extensive. His adult criminal conduct began shortly after he turned twenty-one and continued thereafter for approximately the next fifteen years. Defendant's felony convictions include voluntary manslaughter, aggravated assault, and sale of cocaine. In addition, Defendant has approximately nine misdemeanor convictions, including three drug possessions and two assault convictions, and two convictions for driving on a revoked license. Defendant was sentenced to two five-year sentences in 1999 for the voluntary manslaughter and aggravated assault convictions. We consider this record of criminal activity extensive enough to warrant application of Tennessee Code Annotated section 40-35-115(b)(2). *See State v. Palmer*, 10 S.W.3d 638, 649 (Tenn. Crim. App. 1999). Moreover, the severity of Defendant's offenses has escalated over the years from simple possession of drugs and assault convictions to voluntary manslaughter, aggravated assault, and sale of drugs. The statutory criteria in Tennessee Code Annotated section 40-35-115 are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. Thus, we conclude that consecutive sentencing is "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn. Code Ann. §§ 40-35-102(1) and -103(2). Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record in this matter, we modify Defendant's conviction for evading arrest from a Class D felony to a Class E felony, and impose a Range II sentence of four years. We merge Defendant's misdemeanor evading arrest conviction into his Class E felony evading arrest conviction. We affirm Defendant's conviction and sentence for his Class C felony theft offense and misdemeanor resisting arrest offense, and the trial court's imposition of consecutive sentencing, for an effective sentence, as modified, of fourteen years, eleven months and twenty-nine days.

_____
THOMAS T. WOODALL, JUDGE